**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re:** **CASE NO.: 6:20-bk-05582-LVV**

**1069 RESTAURANT GROUP, LLC, *et al.*** **CHAPTER 11**

**Debtors.** **Jointly Administered**[1]
_________________________________/

# DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR 1069 RESTAURANT GROUP, LLC, *et al.*


COUNSEL FOR THE DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
JOHN B. DORRIS, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


January 5, 2021

[1] Jointly administrated with the following cases: 1069 Restaurant Group, LLC, Case No.: 6:20-bk-05582; Metro Corral Partners, LLC, Case No.:6-20-bk-05583; Metro Corral Partners, Inc., Case No.: 6:20-bk-05584; Altamonte GC, Inc., Case No.: 6:20-bk-05585; Celebration GC Ventures, LLC, Case No.: 6-20-bk-05586; Clermont GC, LLC, Case No.: 6:20-bk-05587; East Colonial, LLC, Case No.: 6:20-bk-05588; and MCP of Kissimmee, Inc., Case No.: 6-20-bk-0559.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:20-bk-05582-LVV** |
| **1069 RESTAURANT GROUP, LLC, *et al.*** | **CHAPTER 11** |
| **Debtors.** ______________________________/ | **Jointly Administered** |

**DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125**
**FOR 1069 RESTAURANT GROUP, LLC, *et al.***

## ARTICLE I - INTRODUCTION AND SUMMARY

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case (the "Bankruptcy Case") to make an informed judgment about the Plan of Reorganization (hereinafter the "Plan") submitted by 1069 Restaurant Group, LLC. ("1069 RG", or the "Debtor" or "Reorganized Debtor"-where appropriate ), and seven (7) of its affiliates or subsidiaries (the "Affiliated Debtors") ("1069 RG" and the "Affiliated Debtors" are hereinafter collectively referred to as the "Debtors" or "Reorganized Debtors"– where appropriate). Debtors are soliciting votes to accept the Plan, the overall purpose of which is to provide for the restructuring of the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders while providing for the Debtors to continue as a going concern.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS**

**DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AND DUE TO THE COMPLEXITY OF THE DEBTORS' FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

A. Outline of Plan.

As prescribed by the Code and the Federal Rules of Bankruptcy Procedure, the Plan places into "Classes" all Claims asserted against, and Equity Interests in the Debtors. As more fully described below, the Plan contemplates the emergence of the Reorganized Debtors and designates thirty-six (36) separate classes of Claims and Interests. The Plan provides for payment of Allowed Secured Claims in Classes 1 through 20 in full, over time and under the terms as outlined in Article V below. Allowed Unsecured Claims in Class 21 shall be paid quarterly from a Cash Flow Note based on excess cash flow. Allowed Unsecured Claims in Classes 22 through 28 shall be paid in full over time from the Monthly Distribution. The Allowed Interests in Classes 29 through 36 will carry forth after the Effective Date. The Debtors believe the Plan provides the best means currently available for its emergence from Chapter 11 and the best recoveries possible for holders of claims and interests, and thus strongly recommends Creditors vote to accept the Plan.

B. Voting and Impairment of Claims and Interests.

To the extent the legal, contractual, or equitable rights with respect to any Claim asserted against the Debtors is altered, modified, or changed by treatment proposed under the Plan, such Claim is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement. You should use the Ballot that will be sent to you to cast your vote for or against the Plan. You may *not* cast Ballots or vote orally or by facsimile. Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan. The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

**THE VOTE OF EACH CREDITOR WITH AN IMPAIRED CLAIM IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail below, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court shall schedule a hearing to consider whether the Debtors have complied with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in this Disclosure Statement, the Debtors have expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## ARTICLE II -BACKGROUND AND EVENTS LEADING TO FILING BANKRUPTCY

A. General Background

The Debtor is a privately held Florida corporation formed to operate thirty-three Golden Corral restaurants, (the "Restaurants"), located in the greater Orlando, Florida and Atlanta, Georgia areas. 1069 RG is the sole owner of its co-Debtor subsidiaries. Holm & Holm Corporation, Inc. is the sole owner of 1069 RG and Eric Holm and Diane Holm are the sole owners of Holm & Holm Corporation Inc. A chart identifying the corporate ownership structure of the Debtors is attached hereto as **Exhibit "A"** and is incorporated herein by reference. Mr. Eric Holm, ("Mr. Holm"), serves as 1069 RG's manager as well as the manager and President for each subsidiary. The Restaurants were designed to offer traditional all-you-can-eat buffet and grill style dining during lunch and dinner hours. The number of Restaurants grew steadily through the 1990's, then

more than doubled in 2004 with the addition of thirteen new locations. Growth steadily continued through the 2000's, and the Debtor became the largest franchisee in the Golden Corral chain of restaurants. The combined companies 2019-year end restaurant sales were more than $141 million. 1069 RG maintains its corporate offices at: 1069 W Morse Blvd., Winter Park, Florida 32714.

The Restaurants are now owned and operated through seven subsidiaries. Metro Corral Partners, Inc., ("MCP Inc."), originally formed in 1993, operates six Restaurants in the metro Orlando, Florida area. As of the Petition Date, none of these Restaurants were open, but MCP Inc. reopened the following two Restaurants by the end of December: (i) I-Drive (8032 International Drive, Orlando); and (ii) Vineland (8707 Vineland Avenue, Orlando). A chart identifying the Restaurants is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

Metro Corral Partners, LLC, ("MCP LLC"), operates nineteen Restaurants in the greater Atlanta, Georgia area. As of the Petition Date, the following five Restaurants were open: (i) Gainesville (1450 SW Browns Bridge Road, Gainesville); (ii) Conyers (1350 NE Highway 138, Conyers); (iii) Douglasville (6975 Douglas Boulevard, Douglasville); (iv) McDonough (1755 Jonesboro Road, McDonough); and (v) Kennesaw (700 Ernest Barrett Parkway, Kennesaw). Metro GA reopened the following six Restaurants by the end of December: (i) Cobb Parkway (2211 Cobb Parkway SE, Marietta); (ii) Bullsboro Drive (605 Bullsboro Drive, Newnan); (iii) Lawrenceville Highway (2136 Lawrenceville Highway, Decatur); (iv) Highway 138 (3867 Highway 138, Stockbridge); (v) Market Place Boulevard (2025 Market Place Boulevard, Cumming); and (vi) May Street (163 E. May Street, Winder). A chart identifying the Restaurants is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

Each of the following Debtors, which are ultimately owned by 1069 RG, operate one Restaurant: (i) MCP of Kissimmee, Inc., ("Kissimmee"); (ii) Altamonte GC, Inc.,

("Altamonte"); (iii) Celebration GC Ventures, LLC, ("Celebration"); (iv) Clermont GC, LLC, ("Clermont"); and (v) East Colonial, LLC, ("East Colonial"). As of the Petition Date, only the Restaurant owned by Celebration was open. The Debtors opened the Restaurants owned by East Colonial, Clermont, and Altamonte by the end of December. All the operations for the stand alone entities are conducted through MCP Inc. A chart identifying the Restaurants is attached hereto as **Exhibit "D"** and is incorporated herein by reference.

B. Significant Developments and Events Leading to Bankruptcy Filing

The unexpected and unprecedented COVID-19 pandemic, (the "Pandemic"), severely impacted the Restaurants. On March 13, 2020, the President of the United States declared a national emergency as a result of the Pandemic. To combat the spread of COVID-19, public health officials urged all people to stay at home and to practice "social distancing" when engaging in essential tasks. Non-essential tasks and services were to be reduced or eliminated. The State of Florida and Georgia stay at home directives precluded businesses from operating as usual. Commercial and retail operations, particularly those providing services deemed non-essential, were forced to adapt, or shut down. Eateries with existing delivery options attempted to continue operations, yet those without delivery, especially buffet style eateries, like the Restaurants, were not designed as take-out providers and subsequently faced closure.

On March 16, 2020, all Restaurants were closed. During April through July 2020, the companies considered numerous restructuring options and negotiated with various creditor groups as to past due obligations. Beginning in late August through mid-September several locations reopened in Georgia and Florida. As of the Petition Date six (6) locations were open for dine-in service. The Pandemic continues to influence national and state public health policies, yet restrictions in both Florida and Georgia have eased substantially providing the Restaurants an opportunity to increase operations. Mr. Holm and his management team are prepared to implement

new designs for the Restaurants to enhance dinning safety and will utilize the chapter 11 reorganization process to begin implementing those redesigns while assessing which locations remain viable going forward. Restaurants are gradually reopening for dine-in services, and additional locations will reopen when management believes it is safe to do so.

C. <u>Significant Developments and Events Subsequent to Debtor's Chapter 11 Filing</u>

On October 5, 2020 (the "Petition Date"), the Debtors filed their petitions for relief under Chapter 11 of the Code. No trustee has been appointed. The Debtors continue to operate their business and manage their properties as debtors-in-possession under §§ 1107 and 1108 of the Bankruptcy Code. Following the Petition Date, the Debtors have continued to operate as debtors-in-possession under Section 1107(a) and 1108 of the Code. At the commencement of the cases, Debtors have also sought and obtained:

1. Authority to pay prepetition employee wages ("Wage Motions") (Order – MCP Inc. Doc. No. 27, MCP LLC Doc. No. 36).

2. Authority to maintain their prepetition bank accounts on a temporary basis ("Bank Account Motion") (MCP Inc. Doc. No. 28, MCP LLC Doc. No. 35).

3. Authority to enter in to enter into a critical vendor agreement with McLane Foodservice Distribution, Inc. pursuant to 11 U.S.C. Sections 105(a), 363(b) and 1107(a) and grant an Administrative Expense Priority Status (Doc. No. 72).

4. Authority to reject the following unexpired leases of nonresidential real properties: (i) 915 North Point Drive, Alpharetta, GA; (ii) 3845 Austell Road, Austell, GA; (iii) 8465 Tara Boulevard, Jonesboro, GA; (iv) 3888 Stone Mountain Highway, Snellville, GA; and (v) 2155 Riverside Parkway, Lawrenceville, GA (MCP LLC Doc. No. 56).

Subsequently, on October 9, 2020, Metro I-Drive, LLC filed a motion to dismiss its bankruptcy case (case no. 6:20-bk-05594-LVV) (Doc. No. 18), and on November 19, 2020, Maingate GC, Inc. filed a motion to dismiss its bankruptcy case (case no. 6:20-bk-05589-LVV) (Doc. No. 89). Both motions to dismiss are pending and will be heard by the Court on January 6, 2021.

On November 3, 2020 the United States Trustee created a Committee of Creditors Holding Unsecured Claims, (the "Creditors Committee") (Doc. No. 65).

As of December 31, 2020, the Debtors had a total of seventeen (17) Restaurants open in Georgia and Florida. On December 16, 2020, the Debtors filed a motion to assume, as modified, the unexpired lease of nonresidential real property by and between MCP LLC and GC Kennesaw, LLC (the "Kennesaw Lease Assumption Motion") (Doc No. 114). The Kennesaw Lease Assumption Motion seeks to assume the Lease and Lease Amendment pursuant to Section 365(a) and (d) of the Bankruptcy Code, which is one of Debtors' best Restaurant locations. On December 21, 2020, the Debtors filed a motion to assume, as modified, the unexpired lease of nonresidential real property by and between MCP LLC and Gwinnett Prado, L.P. (the "Gwinnett Lease Assumption Motion") (Doc. No. 116). The Gwinnett Lease Assumption Motion seeks to assume the Lease and Lease Amendment pursuant to Section 365(a) and (d) of the Bankruptcy Code, which is one of Debtors' best Restaurant locations. Both motions are scheduled to be heard on January 6, 2021.

On December 15, 2020, the Debtors and Regions Bank, as Administrative Agent ("Regions") attended a full day mediation regarding the treatment of Regions' Allowed Secured Claim. The parties settled and entered into a Confidential Mediated Term Sheet (the "Regions Term Sheet"). The Regions Term Sheet provides for specific treatment under the Plan of Regions' Allowed Secured Claim, detailed further below in Section V.

As discussed *supra* the Pandemic created massive business disruptions throughout the state and country causing the United States to officially enter a recession in February 2020.[2] The Pandemic created a substantial economic contraction reducing the shipment of good and products, which further exacerbated the turmoil already effecting the restaurant industry. Both Florida and the United States continues to grapple with the Pandemic and its pernicious economic and social effects, and the Debtors recognize those uncertainties weigh on its own economic outlook. The post-petition negotiations with creditors and the terms of the Plan are expected to provide solid footing for the Reorganized Debtors going forward.

## ARTICLE III - THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTOR'S PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A. Overview.

All Claims held against the Debtor shall be classified and treated pursuant to the terms of the Plan. The Plan contains thirty-six (36) Classes of Claims and Interests. The Plan provides for payment of Allowed Secured Claims in Classes 1 through 20 in full, over time and under the terms as outlined in Article V below. Allowed Unsecured Claims in Class 21 shall be paid quarterly from a Cash Flow Note based on excess cash flow. Allowed Unsecured Claims in Classes 22 through 28 shall be paid in full over time from the Monthly Distribution. In addition, the Plan further provides the respective Holders of Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims (if any) will be paid in full on the Effective Date

[2] "The U.S. Entered a Recession in February: The pandemic forced the economy to contract sharply, ending a record expansion and prompting the group that dates U.S. business cycles to formally declare a recession." *N.Y. Times*, June 8, 2020. https://www.nytimes.com/2020/06/08/business/economy/us-economy-recession-2020.html

or in accordance with the treatment specified herein. The Allowed Interests in Classes 29 through 36 will carry forth after the Effective Date.

B. Impairment of Claims.

To the extent the legal, contractual or equitable rights with respect to any Claim or Interest asserted against the Debtors is altered, modified or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. The characterization of each Claim or Interest as "Impaired" or "Unimpaired" is set forth below.

C. Determination of Allowed Amounts.

Treatment prescribed for Claims in the following sections shall in all events refer exclusively to the Allowed Amounts of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement, Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, Debtor reserves the right to seek to value (under Bankruptcy Code Section 506) or to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

## ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS

A. Administrative Expense Claims.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim

and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Debtors' funds available and operational revenue. Debtors estimates Administrative Claims to be approximately $250,000, after deducting pre-petition and post-petition retainers.

B. Priority Claims.

1. Allowed Priority (Non Real Estate) Tax Claims.

Except to the extent that the Holder and the Debtors have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from the Petition Date. Each Allowed Priority Tax Claim will accrue interest at five percent (5.00%); the payments will be made quarterly. Payments will commence on the later of the Effective Date, or on such dates as a respective Priority Claim becomes Allowed. Debtors believe Priority Tax Claim will total approximately $1,000,000.

2. Allowed Priority Claims (Non-Tax).

Except to the extent that the Holder and the Debtors have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payment for

Priority Claims (non-tax) will be from the Debtors' funds available and operational revenue; however, the current amount of such claims is zero.

C. United States Trustee Fees.

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand.

D. Secured Claims.

1. Class 1 – Secured Claim of Orange County, FL (MCP Inc.) - Class 1 consists of the Allowed Secured Claim of the Orange County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Restaurants located at: (i) 7251 W Colonial Dr., Orlando, FL 32818; (ii) 8032 International Dr., Orlando, FL 32819; and (iii) 2328 S Semoran Blvd., Orlando, FL 32822, the Orange County Tax Collector shall have an Allowed Claim of $132,026.64. In full satisfaction of the Allowed Class 1 Claim, the Orange County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 1 is not Impaired.

2. Class 2 – Secured Claim of Orange County, FL (East Colonial LLC) - Class 2 consists of the Allowed Secured Claim of the Orange County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Restaurant located at 11731 E Colonial Drive, Orlando, FL 32817, the Orange County Tax Collector shall have an Allowed Claim of $53,172.57. In full satisfaction of the Allowed Class 2

Claim, the Orange County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 2 is not Impaired.

3. Class 3 – Secured Claim of Osceola County, FL (MCP of Kissimmee Inc.) - Class 3 consists of the Allowed Secured Claim of the Osceola County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Osceola County Property Appraiser's Office for the Restaurant located at 2701 W Vine Street, Kissimmee, FL 34741, the Osceola County Tax Collector shall have an Allowed Claim of $32,566.38. In full satisfaction of the Allowed Class 3 Claim, the Osceola County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 3 is not Impaired.

4. Class 4 – Secured Claim of Lake County, FL (Clermont GC LLC) - Class 4 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Lake County Property Appraiser's Office for the Restaurant located at 1555 Grand Hwy., Clermont, FL 34711, the Lake County Tax Collector shall have an Allowed Claim of $33,659.40. In full satisfaction of the Allowed Class 4 Claim, the Lake County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined

by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 4 is not Impaired.

5. Class 5 – Secured Claim of Marion County, FL (MCP Inc.) - Class 5 consists of the Allowed Secured Claim of the Marion County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Marion County Property Appraiser's Office for the Restaurant located at 2111 SW College Rd., Ocala, FL 34474, the Marion County Tax Collector shall have an Allowed Claim of $39,301.40. In full satisfaction of the Allowed Class 5 Claim, the Marion County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 5 is not Impaired.

6. Class 6 – Secured Claim of Seminole County, FL (Altamonte GC Inc.) - Class 6 consists of the Allowed Secured Claim of the Seminole County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Seminole County Property Appraiser's Office for the Restaurant located at 897 West Town Pkwy., Altamonte Springs, FL 32714, the Seminole County Tax Collector shall have an Allowed Claim of $39,299.69. In full satisfaction of the Allowed Class 6 Claim, the Seminole County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 6 is not Impaired.

7. Class 7 – Secured Claim of Volusia County, FL (MCP Inc.) - Class 7 consists of the Allowed Secured Claim of the Volusia County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Volusia County Property Appraiser's Office for the Restaurant located at 907 Taylor Rd., Port Orange, FL 32826, the Volusia County Tax Collector shall have an Allowed Claim of $40,074.69. In full satisfaction of the Allowed Class 7 Claim, the Volusia County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 7 is not Impaired. Impaired.

8. Class 8 – Secured Claim of Bibb County, GA (MCP LLC.) - Class 8 consists of the Allowed Secured Claim of the Bibb County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Bibb County Property Appraiser's Office for the Restaurant located at 4704 Presidential Pkwy., Macon, GA 31206, the Bibb County Tax Collector shall have an Allowed Claim of $35,622.19. In full satisfaction of the Allowed Class 8 Claim, the Bibb County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 8 is not Impaired.

9. Class 9 – Secured Claim of Clayton County, GA (MCP LLC) - Class 9 consists of the Allowed Secured Claim of the Clayton County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Clayton County Property Appraiser's Office for the Restaurant located at 3867Highway 138, Stockbridge, GA 30281, the Clayton County Tax

Collector shall have an Allowed Claim of $36,349.66. In full satisfaction of the Allowed Class 9 Claim, the Clayton County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 9 is not Impaired.

10. Class 10 – Secured Claim of DeKalb County, GA (MCP LLC) - Class 10 consists of the Allowed Secured Claim of the DeKalb County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Dekalb County Property Appraiser's Office for the Restaurant located at 2136 Lawrenceville Hwy., Decatur, GA 30033, the DeKalb County Tax Collector shall have an Allowed Claim of $50,254.31. In full satisfaction of the Allowed Class 10 Claim, the DeKalb County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 10 is not Impaired.

11. Class 11 – Secured Claim of Forsyth County, GA (MCP LLC) - Class 11 consists of the Allowed Secured Claim of the Forsyth County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Forsyth County Property Appraiser's Office for the Restaurant located at 2025 Market Place Blvd., Cumming, GA 30041, the Forsyth County Tax Collector shall have an Allowed Claim of $22,180.72. In full satisfaction of the Allowed Class 11 Claim, the Forsyth County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such

claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 11 is not Impaired.

12. Class 12 – Secured Claim of Hall County, GA (MCP LLC) - Class 12 consists of the Allowed Secured Claim of the Hall County Tax Collector for 2020 real estate taxes. Based upon the assessments determined by the Hall County Property Appraiser's Office for the Restaurant located at 1450 SW Browns Bridge Rd., Gainesville, GA 30501, the Hall County Tax Collector shall have an Allowed Claim of $26,841.83. In full satisfaction of the Allowed Class 12 Claim, the Hall County Tax Collector shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 12 is not Impaired.

**ARTICLE V – CLASSIFICATION AND TREATMENT OF IMPAIRED CLAIMS**.

A. Secured Claims.

Classes 13-20- Secured Claims of Regions Bank, as Administrative Agent- Classes 13-20 consist of the Allowed Secured Claims of the Regions Bank, as Administrative Agent ("Regions"), against each of the Reorganized Debtors. Classes 13-20 are Impaired. Regions shall have an Allowed Secured Claim based upon full amount of its claim, including principal, interest, and attorneys' fees, estimated to be $52,363,414.63, as of 10/5/20, which includes default rate of interest and legal fees, with interest at non-default rate and legal fees continuing to accrue post-petition. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Additional terms are as follows:

1. Interest Rate: Variable rate of interest, LIBOR + 425 basis points, w/ 30 basis points floor for LIBOR, to adjust monthly, with LIBOR Phase-Out/Conversion Disclosure included.

2. Amortization Schedule: 25-year for year 1; 20-year for year 2; and 15-year for year 3 of payments.

3. Maturity Date: 3-year maturity after entry of Final Order confirming plan of reorganization.

4. Plan Payments: Payments shall commence upon first day of month following entry of Final Order confirming Plan of Reorganization.

5. Retention of Liens, Encumbrances, and Mortgages: Regions shall retain all existing liens, encumbrances, and mortgages; Debtors shall ratify that liens, encumbrances, and mortgages are properly perfected; and Regions shall be treated as an over-secured creditor.

6. First Mortgages: Upon entry of a final Confirmation Order, Debtor shall grant Regions a first mortgage against the Gainesville, Georgia, Altamonte GC, and Clermont GC locations of the Debtors and a security interest against all assets of those Debtors.

7. Payment of Legal Fees: Debtors shall pay, from the Segregated Cash Collateral, pre and post-petition legal fees, capped at $250,000.00, of Regions, once the confirmation order becomes a Final Order, with the remaining balance of the Segregated Cash Collateral funds, if any, released to the Debtors for their operations and obligations under the plan of reorganization; any legal fees and costs of Regions exceeding $250,000.00 shall be added to the Allowed Secured Claim and paid pursuant to the plan treatment set forth herein.

8. Formal Documentation: Theses terms are subject to entry into written forbearance agreement or amended and restated loan documents (form of which at discretion of

Regions), setting forth the terms herein, customary terms, and appropriate covenants, including limitation of distributions and dividends covenant except what is necessary for taxes (but allow management fee of 2%).

9. Ratification of Existing Guaranties: Guarantors shall ratify all existing guaranties, if any.

10. Release and Waiver of Claims: Debtors shall release and waive any claims, causes of action, defenses, rights of setoff, against Regions and members of bank group related to claims of Regions.

11. One-Time Deferral of Closure Period Payments: Through 2021, payments shall be deferred during duration of one closure period, up to a maximum of 90 days, and only in the event that all restaurants in Florida and Georgia are mandated to close by governmental restrictions due to pandemic, with deferred payments to be cured upon maturity.

12. Waiver of Automatic Stay: Debtors consent to lifting of the automatic stay in the event of subsequent bankruptcy filing.

13. Sale of MCP Inc. Real Property: The Debtors are in the process of selecting a broker for the listing and sale of the following real property owned by MCP Inc.: (i) 7251 W. Colonial Drive, Orlando, FL; and (ii) 2328 Semoran Boulevard, Orlando, FL (the "MCP Inc. Real Property"). The Debtors expect to close on the sale of the MCP Inc. Real Property within 60 days of the Effective Date, and the net proceeds of the sale will be paid to Regions.

B. Unsecured Claims.

1. Class 21 – 1069 RG Allowed General Unsecured Claims. Class 21 consists of all Allowed General Unsecured Claims against 1069 RG, including the $9,300,000 Paycheck Protection Program loan from Regions Bank (the "PPP Loan"). 1069 RG may be eligible for

forgiveness of the PPP Loan since the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, and/or utilities during either the 8- or 24-week period after disbursement. 1069 RG is currently in the process of applying for forgiveness of the PPP Loan. To the extent the PPP Loan is not forgiven, the balance will be a Class 21 Claim. In full satisfaction of the Allowed Class 21 Claims, holders of such claims shall receive the proceeds any new value, to the extent there is a requirement for Holm & Holm Corporation, Inc. to infuse new value to retain its equity in the Debtors. In addition, Holders of Class 21 Claims shall receive a *pro rata* quarterly payment in accordance with the Cash Flow Note. The Cash Flow Note will require a quarterly *pro rata* distribution of twenty five percent (25%) of the excess funds of MCP LLC and MCP Inc. The maximum Distribution under the Cash Flow Note shall be equal to the total amount of the Allowed Class 21 Claims. For purposes of determining Cash Flow Payments, the surplus shall be determined quarterly with the first measuring date being June 30, 2021. Distributions of Cash Flow Payments, if any, shall be paid within thirty (30) days of the measuring date. Cash Flow Payments shall terminate eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely no distribution to Holders of Allowed Class 21 Claims as the debt encumbering assets exceeds the value of such assets. Class 21 is Impaired.

2. Class 22 – MCP LLC Allowed General Unsecured Claims. Class 22 consists of all Allowed General Unsecured Claims against MCP LLC. In full satisfaction of their Allowed Class 22 Unsecured Claims, Holders of Class 22 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the

Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 22 Claims. Class 22 is Impaired.

3. Class 23 – MCP Inc. Allowed General Unsecured Claims. Class 23 consists of all Allowed General Unsecured Claims against MCP Inc. In full satisfaction of their Allowed Class 23 Unsecured Claims, Holders of Class 23 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 23 Claims. Class 23 is Impaired.

4. Class 24 – Altamonte GC Inc. Allowed General Unsecured Claims. Class 24 consists of all Allowed General Unsecured Claims against Altamonte GC Inc. In full satisfaction of their Allowed Class 24 Unsecured Claims, Holders of Class 24 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 24 Claims. Class 24 is Impaired.

5. Class 25 – Celebration GC Ventures LLC Allowed General Unsecured Claims. Class 25 consists of all Allowed General Unsecured Claims against Celebration GC Ventures LLC. In full satisfaction of their Allowed Class 25 Unsecured Claims, Holders of Class 25 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for

eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 25 Claims. Class 25 is Impaired.

6. Class 26 – Clermont GC LLC Allowed General Unsecured Claims. Class 26 consists of all Allowed General Unsecured Claims against Clermont GC LLC. In full satisfaction of their Allowed Class 26 Unsecured Claims, Holders of Class 24 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 26 Claims. Class 26 is Impaired.

7. Class 27 – East Colonial LLC Allowed General Unsecured Claims. Class 27 consists of all Allowed General Unsecured Claims against East Colonial LLC. In full satisfaction of their Allowed Class 27 Unsecured Claims, Holders of Class 27 Claims shall receive a monthly *pro rata* share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28 to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 27 Claims. Class 27 is Impaired.

8. Class 28 – MCP of Kissimmee Inc. Allowed General Unsecured Claims. Class 28 consists of all Allowed General Unsecured Claims against MCP of Kissimmee Inc. In full satisfaction of their Allowed Class 28 Unsecured Claims, Holders of Class 28 Claims shall receive a share of the Monthly Distribution until paid in full, without interest. Based upon the Debtors' estimate of the total amount of all Allowed Unsecured Claims in Classes 22 through 28

to be $3,000,000.00, the Monthly Distribution will continue for eighty-four (84) months from the Effective Date. In the event of a conversion and liquidation, there would be likely a much smaller distribution to Holders of Allowed Class 28 Claims. Class 28 is Impaired.

C. Equity Interests.

1. Class 29 – Equity Ownership Interests in 1069 RG. Class 29 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. To the extent unsecured creditors in Class 21 object or do not vote in favor of the Plan, Holm & Holm Corporation, Inc. will contribute $50,000.00 as new value, subject to higher and better offers.

2. Class 30 – Equity Ownership Interests in MCP LLC. Class 30 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

3. Class 31 – Equity Ownership Interests in MCP Inc. Class 31 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

4. Class 32 – Equity Ownership Interests in Altamonte GC Inc. Class 32 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange

retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

5. Class 33 – Equity Ownership Interests in Celebration GC Ventures LLC. Class 33 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

6. Class 34 – Equity Ownership Interests in Clermont GC LLC. Class 34 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

7. Class 35 – Equity Ownership Interests in East Colonial LLC. Class 35 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

8. Class 36 – Equity Ownership Interests in MCP of Kissimmee Inc. Class 36 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. In exchange retaining existing Interests, 1069 RG (the equity owner) will waive any and all claims regarding any intercompany transfers to the Debtor of the proceeds of the PPP Loan.

## ARTICLE VI - MEANS OF IMPLEMENTATION.

A. Business Operations and Cash Flow.

The Plan contemplates the Debtors will continue to operate with reduced operating expenses and lower monthly required payments to Regions. Debtors believe the cash flow generated from operations following the restructuring of debt will be sufficient to make all Plan Payments and will be sufficient to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

B. Funds Generated During Chapter 11.

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtors' cash on hand as of Confirmation will be available for payment of Administrative Expenses.

C. Disbursing Agent.

The Reorganized Debtors will serve as the Disbursing Agent for all Distributions to be made under the Plan. In addition, the Reorganized Debtors will oversee and direct all claim objections and all other actions required to be taken under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court.

D. Management and Control of the Reorganized Debtor.

The operations of the Reorganized Debtors will continue to be overseen by the current manager (Mr. Holm) following Confirmation, who will have uninterrupted authorization to manage the day-to-day normal business operations of the Reorganized Debtors with all the powers and duties of a manager as set forth in the Debtors' operating agreements.

E. Other Provisions.

1. Leases and Executory Contracts.

To the extent Debtors reject any executory contracts or unexpired leases prior to the hearing on Confirmation, any party asserting a Claim, pursuant to § 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract. To the extent the Debtors do not file a motion to assume prior to Confirmation, any such lease will be deemed rejected.

2. Procedures For Resolving Disputed Claims.

a. Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtors shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtors.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of

setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b. Estimation of Claims.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c. Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or

resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d. Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtors such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e. Allowance of Claims and Interests.

(i) Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtors have obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity

are turned over to the Debtors. The Debtors, and upon the Effective Date the Liquidating Agent, shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

(ii) Allowance of Claims.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

f. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

3. Effect of Confirmation.

a. Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. Unless otherwise noted herein, the Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

b. Post-Confirmation Status Report.

Within ninety (90) days of the entry of the Confirmation Order, the Reorganized Debtors will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## ARTICLE VII - CONFIRMATION

A. Confirmation Hearing.

Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

Counsel for the Debtors:

R. Scott Shuker, Esquire
Shuker & Dorris, P.A.
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801

Debtors:

1069 Restaurant Group, LLC*, et al*.
Attn: Eric Holm
1069 West Morse Blvd.
Winter Park, Florida 32789

United States Trustee:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Counsel for the Official Committee of Unsecured Creditors

Daren R. Brinkman, Esq.
Brinkman Law Group, PC
543 Country Club Drive, Suite B
Wood Ranch, CA 93065

B. Financial Information Relevant to Confirmation.

Attached as exhibits to this Disclosure Statement, and incorporated herein, are the following:

1. A copy of the Debtors' financial projections (the "Projections") for the three (3) years following confirmation of the Plan is attached hereto as **Exhibit "E"**. The Projections demonstrate that the Debtors' cash flow from operations will be sufficient to service the required Plan Payments. The Projections may not be relied upon as a guaranty or other assurance of the actual results that will occur as they are based upon a variety of estimates and assumptions which may not be realized; and

2. Debtors' Chapter 7 liquidation analysis (the "Liquidation Analysis") is attached hereto as **Exhibit "F"**. The Liquidation Analysis demonstrates that Creditors will receive under the Plan an amount not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7.

C. Confirmation Standards.

For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of

the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept the plan, that confirmation of the plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in § 1129 of the Code have been met. The Debtors believe that the Plan satisfies all of the requirements for Confirmation.

1. <u>Best Interests Test</u>.

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code. The Debtors believe that satisfaction of this test is established by the Liquidation Analysis.

To determine what holders of Claims would receive if the Debtors were liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case. The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtors during the Bankruptcy Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would

receive any meaningful distribution. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Bankruptcy Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors, including the following:

a. the possible costs and expenses of the Chapter 7 trustee or trustees;

b. the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for the Debtors' assets caused by the forced Chapter 7 liquidation;

c. the loss of the going-concern value of the Debtors' businesses; and

d. the possible substantial increase in Claims, which would rank prior to or on a parity with those of Unsecured Creditors.

2. Financial Feasibility.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors unless the liquidation is proposed in the Plan. Debtors believe that its cash flow from operations will be sufficient to make all Plan Payments noted herein. Based upon the Projections, Debtors assert that the Plan is feasible, and Confirmation is not likely to be followed by further financial reorganization.

3. Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4. Confirmation Without Acceptance by all Impaired Classes: "Cramdown."

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTORS BELIEVE THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D. Consummation.

The Plan will be consummated, and Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court and the Effective Date occurs. It will not be necessary for the Reorganized Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

## ARTICLE VIII – MISCELLANEOUS PROVISIONS

A. Exculpation from Liability.

The Debtors, and its officers, directors, members, managers, managing members and Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure

Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and its respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtors' members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

B. Police Power.

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

C. Revocation and Withdrawal of this Plan.

The Debtors reserve the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

D. Modification of Plan.

The Debtors may seek to amend or modify this Disclosure Statement and the Plan in accordance with § 1127(b) of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and

take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## ARTICLE IX - ALTERNATIVE TO THE PLAN

If the Plan is not confirmed and consummated, the Debtors believe the most likely alternative is a liquidation of the Debtors' Assets under Chapter 7 of the Code. In a Chapter 7 liquidation, there would be no assets to administer on behalf of unsecured creditors, and a Chapter 7 trustee would likely incur significant Administrative Expenses that would be paid before any distribution to creditors. The Debtors therefore believe that liquidation of all real and personal property in a Chapter 7 case would dramatically reduce the total amount available to Creditors as compared to reorganization under the Plan. In light of the foregoing, the Debtors recommend that holders of Claims vote to accept the Plan.

**RESPECTFULLY SUBMITTED** this 5th day of January 2021.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane A. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
John B. Dorris, Esq.
Florida Bar No. 0093744
jdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
Fax: 407-337-2050
*Attorneys for the Debtors*

**Exhibit "A"**

## CORPORATE ORGANIZATIONAL STRUCTURE

Entities are either S corporations ("Inc") or limited liability companies ("LLC")
All entities are 100% ownership, unless otherwise as indicated



**Exhibit "B"**

# Metro Corral Partners Inc.

| Owner | Address | Tenant | Assessed Value | Lienholder | Status as of December 2020 |
|---|---|---|---|---|---|
| Metro Corral Partners Inc. | 2111 SW College Rd.<br>Ocala, FL 34474<br><br>Parcel ID: 23534-000-00; and 970522 | N/A | $ 1,860,690<br>$ 224,015 | Regions Bank | Closed |
| Metro Corral Partners Inc. | 907 Taylor Rd.<br>Port Orange, FL 32826<br><br>Parcel ID: 631737000040 | N/A | $ 2,030,699 | Regions Bank | Closed |
| Metro Corral Partners Inc. | 7251 W Colonial Dr.<br>Orlando, FL 32818<br><br>Parcel ID: 23-22-28-3558-00-010 | N/A | $ 1,935,065 | Regions Bank | To be listed for sale |
| Metro Corral Partners Inc. | 8032 International Dr.<br>Orlando, FL 32819<br><br>Parcel ID: 36-23-28-3787-00-040 | N/A | $ 2,703,647 | Regions Bank | Open |
| Metro Corral Partners Inc. | 2328 S Semoran Blvd.<br>Orlando, FL 32822<br><br>Parcel Id: 04-23-30-0000-00-001 | N/A | $ 2,309,932 | Regions Bank | To be listed for sale |
| Rjp Vineland Realty LLC | 8707 Vineland Ave.<br>Orlando, FL 32821<br><br>Parcel ID: 22-24-28-5130-00-040 | Metro Corral Partners Inc. | N/A | Regions Bank | Open |

**Exhibit "C"**

# Metro Corral Partners LLC

| Owner | Address | Tenant | Assessed Value | Lienholder | Status as of December 2020 |
|---|---|---|---|---|---|
| Metro Corral Partners LLC | 3867Highway 138<br>Stockbridge, GA 30281<br><br>Parcel ID: 12072B A015 | N/A | $2,238,500 | Regions Bank | Open |
| Metro Corral Partners LLC | 1450 SW Browns Bridge Rd.<br>Gainesville, GA 30501<br><br>Parcel ID: 00119C001025A | N/A | $ 2,199,500 | | Open |
| Metro Corral Partners LLC | 4704 Presidential Pkwy<br>Macon, GA 31206<br><br>Parcel ID: L092-0185 | N/A | $1,892,455 | Regions Bank | Closed |
| Metro Corral Partners LLC | 2025 Market Place Blvd.<br>Cumming, GA 30041<br><br>Parcel ID: C28064 | N/A | $ 802,080 | Regions Bank | Open |
| Metro Corral Partners LLC | 2136 Lawrenceville Hwy<br>Decatur, GA 30033<br><br>Parcel ID: 18 100 02 058 | N/A | $ 1,095,494 | Regions Bank | Open |
| Holm Real Estate LLC | 1350 NE Highway 138<br>Conyers GA 30013<br><br>Parcel ID: 072001005F | Metro Corral Partners LLC | N/A | Regions Bank | Open |
| Holm Real Estate LLC | 605 Bullsboro Dr.<br>Newnan, GA 30263<br><br>Parcel ID: 086 5053 017 | Metro Corral Partners LLC | N/A | Regions Bank | Open |
| Holm Real Estate LLC | 6975 Douglas Blvd.<br>Douglasville, GA 30135<br><br>Parcel ID: 01600250103 | Metro Corral Partners LLC | N/A | Regions Bank | Open |

**Exhibit "C"**

| Owner | Address | Tenant | Assessed Value | Lienholder | Status as of December 2020 |
|---|---|---|---|---|---|
| HRE McDonough LLC | 1755 Jonesboro Rd.<br>McDonough, GA 30253<br><br>Parcel ID: 054-01025002 | Metro Corral Partners LLC | N/A | Regions Bank | Open |
| Holm Real Estate LLC | 2211 Cobb Pkwy S<br>Marietta, GA 30080<br><br>Parcel ID: P91801346 | Metro Corral Partners LLC | N/A | Regions Bank | Open |
| GC Kennesaw LLC | 700 Ernest Barrett Pkwy<br>Kennesaw, GA 30144<br><br>Parcel ID: 16065000120 | Metro Corral Partners LLC | N/A | | Pending motion to assume lease (D.E. 114) |
| Lema Properties LLC &<br>Rceb Realty LLC | 3845 Austell Rd.<br>Austell, GA 30106<br><br>Parcel ID: 19085600550 | Metro Corral Partners LLC | N/A | | Lease Rejected (D.E. 56) |
| Arthur N Rupe Foundation | 8465 Tara Blvd<br>Jonesboro, GA 30236<br><br>Parcel ID: 13242B A020 | Metro Corral Partners LLC | N/A | | Lease Rejected (D.E. 56) |
| GC Property Holdings LLC | 3888 Stone Mountain Hwy<br>Snellville, GA 30339<br><br>Parcel ID: R6053 181 | Metro Corral Partners LLC | N/A | | Lease Rejected (D.E. 56) |
| ZRE Melbourne Corporation | 2155 Riverside Pkwy<br>Lawrenceville, GA 30243<br><br>Parcel ID: R7033 246 | Metro Corral Partners LLC | N/A | | Lease Rejected (D.E. 56) |
| Gwinnett Prado L.P. | 3270 Satellite Blvd.<br>Duluth, GA 30096<br><br>Parcel ID: | Metro Corral Partners LLC | N/A | | Pending motion to assume lease (D.E. 116) |
| Milkathy Corp. | 915 North Point Dr.<br>Alpharetta, GA 30022<br><br>Parcel ID: 12 286007970346 | Metro Corral Partners LLC | N/A | | Lease Rejected (D.E. 56) |

**Exhibit "C"**

| Owner | Address | Tenant | Assessed Value | Lienholder | Status as of December 2020 |
|---|---|---|---|---|---|
| K One Inc. | 4020 Buford Dr.<br>Buford, GA 30518<br><br>Parcel ID: R7229 138 | Metro Corral Partners LLC | N/A | | Closed |
| Ryan Susan Elder | 163 E May St.<br>Winder, GA 30680<br><br>Parcel ID: WN21015 | Metro Corral Partners LLC | N/A | | Open |

**Exhibit "D"**

# Related Debtors

| Owner | Address | Tenant | Assessed Value | Lienholder | Status as of December 2020 |
|---|---|---|---|---|---|
| Altamonte GC Inc. | 897 West Town Pkwy<br>Altamonte Springs, FL 32714<br><br>Parcel ID: 16-21-29-518-0000-0040 | N/A | $2,325,054 | | Open |
| MCP of Kissimmee Inc. | 2701 W Vine Street<br>Kissimmee, FL 34741<br><br>Parcel ID: 17-25-29-00U0-0052-0000 | N/A | $ 1,446,090 | Regions Bank | Closed |
| East Colonial LLC | 11731 E Colonial Drive<br>Orlando, FL 32817<br><br>Parcel ID: 22-22-31-5749-00-010 | N/A | $ 3,335,125 | Regions Bank | Open |
| Clermont GC LLC | 1555 Grand Hwy<br>Clermont, FL 34711<br><br>Parcel ID: 09-22-26-1305-09B-00002 | N/A | $ 1,971,129 | | Open |
| Orchid Bay Development LLC | 11701 International Drive<br>Orlando, FL 32821<br><br>Parcel ID 13-24-28-6283-00-150 | Metro I Drive LLC | N/A | | Pending motion to dismiss (D.E. 18) |
| Alfonso Arribas Trust | 7702 W Irlo Bronson Mem. Hwy<br>Kissimmee, FL 34747<br><br>Parcel ID: 03-25-27-3925-0001-0015 | Maingate GC Inc. | N/A | | Pending motion to dismiss (D.E. 89) |
| Holm Real Estate LLC | 6077 W Irlo Bronson Mem Hwy<br>Kissimmee, FL 34747<br><br>Parcel ID: 05-25-28-4674-0001-0020 | Celebration GC Ventures, LLC | N/A | Regions Bank | Open |

**Exhibit "E"**

## 1069 Restaurant Group
## 3-Year EBITDA and Cash Flow Projection by Fiscal Period - 2021, 2022, & 2023

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Florida stores open:** | | | | | | | | | | | | AUV | 3,007,102 | |
| Sales 2019 | 1,793,039 | 2,651,615 | 4,277,035 | 3,232,467 | 3,017,824 | 4,102,649 | 3,626,445 | 3,106,620 | 2,909,498 | 2,610,633 | 2,605,175 | 3,935,055 | 37,868,056 | |
| Estimated retention rate | 65.0% | 65.0% | 65.0% | 67.5% | 67.5% | 67.5% | 70.0% | 70.0% | 70.0% | 72.5% | 72.5% | 72.5% | 68.8% | |
| **Estimated sales** | **1,165,475** | **1,723,550** | **2,780,073** | **2,181,915** | **2,037,031** | **2,769,288** | **2,538,512** | **2,174,634** | **2,036,648** | **1,892,709** | **1,888,752** | **2,852,915** | **26,041,503** | **100.0%** |
| Rebates and other income | 19,813 | 29,300 | 47,261 | 37,093 | 34,630 | 47,078 | 43,155 | 36,969 | 34,623 | 32,176 | 32,109 | 48,500 | 442,706 | 1.7% |
| Total income | 1,185,289 | 1,752,850 | 2,827,334 | 2,219,008 | 2,071,661 | 2,816,366 | 2,581,666 | 2,211,603 | 2,071,271 | 1,924,885 | 1,920,861 | 2,901,415 | 26,484,208 | 101.7% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 419,571 | 620,478 | 1,000,826 | 785,489 | 733,331 | 996,944 | 913,864 | 782,868 | 733,193 | 681,375 | 679,951 | 1,027,049 | 9,374,941 | 36.0% |
| Payroll, benefits & bonuses | 349,643 | 517,065 | 834,022 | 654,575 | 611,109 | 830,786 | 761,553 | 652,390 | 610,995 | 567,813 | 566,626 | 855,874 | 7,812,451 | 30.0% |
| Controllable expenses | 174,821 | 258,532 | 417,011 | 327,287 | 305,555 | 415,393 | 380,777 | 326,195 | 305,497 | 283,906 | 283,313 | 427,937 | 3,906,225 | 15.0% |
| Non-controllable expenses, ex RE tax | 93,238 | 137,884 | 222,406 | 174,553 | 162,963 | 221,543 | 203,081 | 173,971 | 162,932 | 151,417 | 151,100 | 228,233 | 2,083,320 | 8.0% |
| Rent | 46,708 | 46,708 | 46,708 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 656,875 | 2.5% |
| General & administrative expenses | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 1,105,000 | 4.2% |
| Management fees | 23,310 | 34,471 | 55,601 | 43,638 | 40,741 | 55,386 | 50,770 | 43,493 | 40,733 | 37,854 | 37,775 | 57,058 | 520,830 | 2.0% |
| Total operating expenses | 1,192,291 | 1,700,138 | 2,682,825 | 2,127,960 | 1,996,115 | 2,683,719 | 2,452,462 | 2,121,333 | 2,017,017 | 1,864,782 | 1,861,181 | 2,759,819 | 25,459,643 | 97.8% |
| **EBITDA** | **(7,002)** | **52,711** | **144,509** | **91,048** | **75,546** | **132,647** | **129,204** | **90,269** | **54,255** | **60,103** | **59,680** | **141,595** | **1,024,566** | **3.9%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Re-opening costs | (125,000) | (375,000) | (250,000) | | | | | | | | | | (750,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (360,000) | | (360,000) | |
| Legal & accounting fees & creditors | | | | (115,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (235,000) | |
| Trustee fees | (59,944) | | | (63,253) | | | | | | | | | (123,197) | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | | | | (38,383) | (38,529) | (38,675) | (38,821) | (38,969) | (39,116) | (39,265) | (39,414) | (39,563) | (350,734) | |
| Interest | | | | (81,075) | (80,930) | (80,784) | (80,637) | (80,490) | (80,342) | (80,194) | (80,045) | (79,895) | (724,390) | |
| Change in cash | (191,946) | (322,289) | (105,491) | (206,663) | (58,913) | (1,811) | (5,254) | (44,189) | (80,204) | (74,355) | (434,778) | 7,137 | (1,518,755) | |
| Beginning cash | 2,275,000 | 2,083,054 | 1,760,765 | 1,655,274 | 1,448,612 | 1,389,699 | 1,387,888 | 1,382,634 | 1,338,445 | 1,258,241 | 1,183,886 | 749,108 | 2,275,000 | |
| **Ending cash** | **2,083,054** | **1,760,765** | **1,655,274** | **1,448,612** | **1,389,699** | **1,387,888** | **1,382,634** | **1,338,445** | **1,258,241** | **1,183,886** | **749,108** | **756,245** | **756,245** | |

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Georgia stores open:** | | | | | | | | | | | | AUV | 3,204,713 | |
| Sales 2019 | 3,505,924 | 4,053,034 | 6,723,294 | 4,939,601 | 5,142,667 | 6,103,846 | 4,846,535 | 4,491,427 | 5,414,046 | 4,280,386 | 4,395,189 | 5,918,868 | 59,814,819 | |
| Estimated retention rate | 65.0% | 65.0% | 65.0% | 67.5% | 67.5% | 67.5% | 70.0% | 70.0% | 70.0% | 72.5% | 72.5% | 72.5% | 68.7% | |
| **Estimated sales** | **2,278,851** | **2,634,472** | **4,370,141** | **3,334,231** | **3,471,300** | **4,120,096** | **3,392,575** | **3,143,999** | **3,789,832** | **3,103,280** | **3,186,512** | **4,291,179** | **41,116,469** | **100.0%** |
| Rebates and other income | 27,346 | 31,614 | 52,442 | 40,011 | 41,656 | 49,441 | 40,711 | 37,728 | 45,478 | 37,239 | 38,238 | 51,494 | 493,398 | 1.2% |
| Total income | 2,306,197 | 2,666,086 | 4,422,583 | 3,374,242 | 3,512,956 | 4,169,537 | 3,433,286 | 3,181,727 | 3,835,310 | 3,140,519 | 3,224,750 | 4,342,673 | 41,609,867 | 101.2% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 843,175 | 974,755 | 1,616,952 | 1,233,665 | 1,284,381 | 1,524,435 | 1,255,253 | 1,163,280 | 1,402,238 | 1,148,214 | 1,179,010 | 1,587,736 | 15,213,094 | 37.0% |
| Payroll, benefits & bonuses | 660,867 | 763,997 | 1,267,341 | 966,927 | 1,006,677 | 1,194,828 | 983,847 | 911,760 | 1,099,051 | 899,951 | 924,089 | 1,244,442 | 11,923,776 | 29.0% |
| Controllable expenses | 341,828 | 395,171 | 655,521 | 500,135 | 520,695 | 618,014 | 508,886 | 471,600 | 568,475 | 465,492 | 477,977 | 643,677 | 6,167,470 | 15.0% |
| Non-controllable expenses, ex RE tax | 182,308 | 210,758 | 349,611 | 266,738 | 277,704 | 329,608 | 271,406 | 251,520 | 303,187 | 248,262 | 254,921 | 343,294 | 3,289,318 | 8.0% |
| Rent | 171,291 | 171,291 | 171,291 | 180,291 | 180,291 | 181,474 | 181,474 | 181,474 | 181,474 | 181,474 | 181,474 | 180,591 | 2,143,887 | 5.2% |
| General & administrative expenses | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 780,000 | 1.9% |
| Management fees | 45,577 | 52,689 | 87,403 | 66,685 | 69,426 | 82,402 | 67,851 | 62,880 | 75,797 | 62,066 | 63,730 | 85,824 | 822,329 | 2.0% |
| Total operating expenses | 2,305,045 | 2,628,661 | 4,223,120 | 3,274,441 | 3,399,174 | 4,005,761 | 3,328,716 | 3,102,512 | 3,705,221 | 3,065,458 | 3,141,200 | 4,160,564 | 40,339,874 | 98.1% |

**Exhibit "E"**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **EBITDA** | **1,152** | **37,425** | **199,463** | **99,801** | **113,782** | **163,776** | **104,569** | **79,214** | **130,089** | **75,061** | **83,551** | **182,109** | **1,269,993** | **3.1%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Re-opening costs | | | (125,000) | (125,000) | | | | | | | | | (250,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (520,000) | | (520,000) | |
| Legal & accounting fees & creditors | | | | (170,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (330,000) | |
| Trustee fees | (134,036) | | | (94,068) | | | | | | | | | (228,104) | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | | | | (57,575) | (57,793) | (58,012) | (58,232) | (58,453) | (58,675) | (58,897) | (59,120) | (59,344) | (526,101) | |
| Interest | | | | (121,613) | (121,394) | (121,175) | (120,955) | (120,735) | (120,513) | (120,290) | (120,067) | (119,843) | (1,086,586) | |
| Change in cash | (132,884) | 37,425 | 74,463 | (468,455) | (85,406) | (35,411) | (94,618) | (119,973) | (69,098) | (124,126) | (635,637) | (17,078) | (1,670,798) | |
| Beginning cash | 4,275,000 | 4,142,116 | 4,179,541 | 4,254,004 | 3,785,549 | 3,700,143 | 3,664,732 | 3,570,114 | 3,450,141 | 3,381,043 | 3,256,917 | 2,621,280 | 4,275,000 | |
| **Ending cash** | **4,142,116** | **4,179,541** | **4,254,004** | **3,785,549** | **3,700,143** | **3,664,732** | **3,570,114** | **3,450,141** | **3,381,043** | **3,256,917** | **2,621,280** | **2,604,202** | **2,604,202** | |

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Florida stores open:** | | | | | | | | | | | | AUV | 3,314,256 | |
| Sales 2019 | 1,793,039 | 2,651,615 | 4,277,035 | 3,232,467 | 3,017,824 | 4,102,649 | 3,626,445 | 3,106,620 | 2,909,498 | 2,610,633 | 2,605,175 | 3,935,055 | 37,868,056 | |
| Estimated retention rate | 75.0% | 75.0% | 75.0% | 77.5% | 77.5% | 77.5% | 80.0% | 80.0% | 80.0% | 82.5% | 82.5% | 82.5% | 78.8% | |
| **Estimated sales** | **1,344,779** | **1,988,711** | **3,207,777** | **2,505,162** | **2,338,814** | **3,179,553** | **2,901,156** | **2,485,296** | **2,327,598** | **2,153,773** | **2,149,270** | **3,246,421** | **29,828,308** | **100.0%** |
| Rebates and other income | 22,861 | 33,808 | 54,532 | 42,588 | 39,760 | 54,052 | 49,320 | 42,250 | 39,569 | 36,614 | 36,538 | 55,189 | 507,081 | 1.7% |
| Total income | 1,367,641 | 2,022,519 | 3,262,309 | 2,547,750 | 2,378,574 | 3,233,606 | 2,950,476 | 2,527,546 | 2,367,167 | 2,190,387 | 2,185,807 | 3,301,610 | 30,335,390 | 101.7% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 477,397 | 705,992 | 1,138,761 | 889,332 | 830,279 | 1,128,741 | 1,029,910 | 882,280 | 826,297 | 764,589 | 762,991 | 1,152,479 | 10,589,050 | 35.5% |
| Payroll, benefits & bonuses | 389,986 | 576,726 | 930,255 | 726,497 | 678,256 | 922,070 | 841,335 | 720,736 | 675,003 | 624,594 | 623,288 | 941,462 | 8,650,209 | 29.0% |
| Controllable expenses | 194,993 | 288,363 | 465,128 | 363,248 | 339,128 | 461,035 | 420,668 | 360,368 | 337,502 | 312,297 | 311,644 | 470,731 | 4,325,105 | 14.5% |
| Non-controllable expenses, ex RE tax | 107,582 | 159,097 | 256,622 | 200,413 | 187,105 | 254,364 | 232,092 | 198,824 | 186,208 | 172,302 | 171,942 | 259,714 | 2,386,265 | 8.0% |
| Rent | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 689,000 | 2.3% |
| General & administrative expenses | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 1,105,000 | 3.7% |
| Management fees | 26,896 | 39,774 | 64,156 | 50,103 | 46,776 | 63,591 | 58,023 | 49,706 | 46,552 | 43,075 | 42,985 | 64,928 | 596,566 | 2.0% |
| Total operating expenses | 1,339,270 | 1,912,369 | 3,018,588 | 2,372,011 | 2,223,961 | 2,993,469 | 2,724,446 | 2,354,330 | 2,235,229 | 2,059,274 | 2,055,267 | 3,052,981 | 28,341,195 | 95.0% |
| **EBITDA** | **28,370** | **110,150** | **243,721** | **175,739** | **154,613** | **240,137** | **226,030** | **173,216** | **131,938** | **131,112** | **130,541** | **248,629** | **1,994,195** | **6.7%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (480,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (360,000) | | (360,000) | |
| Legal & accounting fees & creditors | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (180,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (39,713) | (39,864) | (40,015) | (56,562) | (56,776) | (56,992) | (57,208) | (57,425) | (57,642) | (57,861) | (58,080) | (58,301) | (636,438) | |
| Interest | (79,745) | (79,595) | (79,444) | (79,292) | (79,077) | (78,862) | (78,646) | (78,429) | (78,211) | (77,993) | (77,773) | (77,553) | (944,621) | |
| Change in cash | (146,088) | (64,309) | 69,263 | (15,115) | (36,241) | 49,283 | 35,176 | (17,638) | (58,915) | (59,741) | (420,313) | 57,775 | (606,863) | |
| Beginning cash | 756,245 | 610,157 | 545,848 | 615,111 | 599,996 | 563,755 | 613,038 | 648,214 | 630,576 | 571,661 | 511,919 | 91,606 | 756,245 | |
| **Ending cash** | **610,157** | **545,848** | **615,111** | **599,996** | **563,755** | **613,038** | **648,214** | **630,576** | **571,661** | **511,919** | **91,606** | **149,381** | **149,381** | |

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Georgia stores open:** | | | | | | | | | | | | AUV | 3,622,919 | |
| Sales 2019 | 3,505,924 | 4,053,034 | 6,723,294 | 4,939,601 | 5,142,667 | 6,103,846 | 4,846,535 | 4,491,427 | 5,414,046 | 4,280,386 | 4,395,189 | 5,918,868 | 59,814,819 | |
| Estimated retention rate | 75.0% | 75.0% | 75.0% | 77.5% | 77.5% | 77.5% | 80.0% | 80.0% | 80.0% | 82.5% | 82.5% | 82.5% | 78.7% | |
| **Estimated sales** | **2,629,443** | **3,039,776** | **5,042,471** | **3,828,191** | **3,985,567** | **4,730,481** | **3,877,228** | **3,593,141** | **4,331,237** | **3,531,318** | **3,626,031** | **4,883,066** | **47,097,951** | **100.0%** |

**Exhibit "E"**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rebates and other income | 31,553 | 36,477 | 60,510 | 45,938 | 47,827 | 56,766 | 46,527 | 43,118 | 51,975 | 42,376 | 43,512 | 58,597 | 565,175 | 1.2% |
| Total income | 2,660,997 | 3,076,253 | 5,102,980 | 3,874,129 | 4,033,394 | 4,787,246 | 3,923,755 | 3,636,259 | 4,383,212 | 3,573,694 | 3,669,544 | 4,941,663 | 47,663,126 | 101.2% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 959,747 | 1,109,518 | 1,840,502 | 1,397,290 | 1,454,732 | 1,726,625 | 1,415,188 | 1,311,497 | 1,580,902 | 1,288,931 | 1,323,501 | 1,782,319 | 17,190,752 | 36.5% |
| Payroll, benefits & bonuses | 749,391 | 866,336 | 1,437,104 | 1,091,034 | 1,135,887 | 1,348,187 | 1,105,010 | 1,024,045 | 1,234,403 | 1,006,426 | 1,033,419 | 1,391,674 | 13,422,916 | 28.5% |
| Controllable expenses | 381,269 | 440,767 | 731,158 | 555,088 | 577,907 | 685,920 | 562,198 | 521,005 | 628,029 | 512,041 | 525,775 | 708,045 | 6,829,203 | 14.5% |
| Non-controllable expenses, ex RE tax | 210,355 | 243,182 | 403,398 | 306,255 | 318,845 | 378,438 | 310,178 | 287,451 | 346,499 | 282,505 | 290,082 | 390,645 | 3,767,836 | 8.0% |
| Rent | 188,624 | 188,624 | 188,624 | 188,624 | 188,624 | 189,818 | 189,818 | 189,818 | 189,818 | 189,818 | 189,818 | 189,818 | 2,271,842 | 4.8% |
| General & administrative expenses | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 780,000 | 1.7% |
| Management fees | 52,589 | 60,796 | 100,849 | 76,564 | 79,711 | 94,610 | 77,545 | 71,863 | 86,625 | 70,626 | 72,521 | 97,661 | 941,959 | 2.0% |
| Total operating expenses | 2,601,975 | 2,969,223 | 4,776,635 | 3,674,854 | 3,815,706 | 4,498,598 | 3,719,937 | 3,465,679 | 4,141,275 | 3,410,348 | 3,495,116 | 4,635,162 | 45,204,508 | 96.0% |
| **EBITDA** | **59,021** | **107,030** | **326,346** | **199,275** | **217,688** | **288,648** | **203,818** | **170,580** | **241,937** | **163,346** | **174,428** | **306,501** | **2,458,618** | **5.2%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (720,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (520,000) | | (520,000) | |
| Legal & accounting fees & creditors | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (240,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (59,570) | (59,795) | (60,022) | (84,843) | (85,165) | (85,488) | (85,812) | (86,137) | (86,464) | (86,791) | (87,121) | (87,451) | (954,657) | |
| Interest | (119,618) | (119,392) | (119,165) | (118,938) | (118,616) | (118,293) | (117,969) | (117,644) | (117,317) | (116,989) | (116,660) | (116,330) | (1,416,931) | |
| Change in cash | (200,166) | (152,157) | 67,158 | (84,506) | (66,093) | 4,868 | (79,963) | (113,201) | (41,844) | (120,434) | (629,353) | 22,720 | (1,392,970) | |
| Beginning cash | 2,604,202 | 2,404,036 | 2,251,879 | 2,319,037 | 2,234,531 | 2,168,438 | 2,173,306 | 2,093,343 | 1,980,142 | 1,938,298 | 1,817,864 | 1,188,511 | 2,604,202 | |
| **Ending cash** | **2,404,036** | **2,251,879** | **2,319,037** | **2,234,531** | **2,168,438** | **2,173,306** | **2,093,343** | **1,980,142** | **1,938,298** | **1,817,864** | **1,188,511** | **1,211,232** | **1,211,232** | |

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Florida stores open:** | | | | | | | | | | | | AUV | 3,735,013 | |
| Sales 2019 | 1,793,039 | 2,651,615 | 4,277,035 | 3,232,467 | 3,017,824 | 4,102,649 | 3,626,445 | 3,106,620 | 2,909,498 | 2,610,633 | 2,605,175 | 3,935,055 | 37,868,056 | |
| Estimated retention rate | 85.0% | 85.0% | 85.0% | 87.5% | 87.5% | 87.5% | 90.0% | 90.0% | 90.0% | 92.5% | 92.5% | 92.5% | 88.8% | |
| **Estimated sales** | **1,524,083** | **2,253,872** | **3,635,480** | **2,828,409** | **2,640,596** | **3,589,818** | **3,263,801** | **2,795,958** | **2,618,548** | **2,414,836** | **2,409,787** | **3,639,926** | **33,615,114** | **100.0%** |
| Rebates and other income | 25,909 | 38,316 | 61,803 | 48,083 | 44,890 | 61,027 | 55,485 | 47,531 | 44,515 | 41,052 | 40,966 | 61,879 | 571,457 | 1.7% |
| Total income | 1,549,993 | 2,292,188 | 3,697,283 | 2,876,492 | 2,685,486 | 3,650,845 | 3,319,285 | 2,843,489 | 2,663,063 | 2,455,888 | 2,450,754 | 3,701,805 | 34,186,571 | 101.7% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 533,429 | 788,855 | 1,272,418 | 989,943 | 924,209 | 1,256,436 | 1,142,330 | 978,585 | 916,492 | 845,193 | 843,426 | 1,273,974 | 11,765,290 | 35.0% |
| Payroll, benefits & bonuses | 434,364 | 642,354 | 1,036,112 | 806,096 | 752,570 | 1,023,098 | 930,183 | 796,848 | 746,286 | 688,228 | 686,789 | 1,037,379 | 9,580,308 | 28.5% |
| Controllable expenses | 213,372 | 315,542 | 508,967 | 395,977 | 369,683 | 502,575 | 456,932 | 391,434 | 366,597 | 338,077 | 337,370 | 509,590 | 4,706,116 | 14.0% |
| Non-controllable expenses, ex RE tax | 121,927 | 180,310 | 290,838 | 226,273 | 211,248 | 287,185 | 261,104 | 223,677 | 209,484 | 193,187 | 192,783 | 291,194 | 2,689,209 | 8.0% |
| Rent | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 57,417 | 689,000 | 2.0% |
| General & administrative expenses | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 85,000 | 85,000 | 106,250 | 1,105,000 | 3.3% |
| Management fees | 30,482 | 45,077 | 72,710 | 56,568 | 52,812 | 71,796 | 65,276 | 55,919 | 52,371 | 48,297 | 48,196 | 72,799 | 672,302 | 2.0% |
| Total operating expenses | 1,475,990 | 2,114,555 | 3,344,712 | 2,617,274 | 2,452,938 | 3,304,757 | 2,998,242 | 2,588,880 | 2,454,896 | 2,255,398 | 2,250,981 | 3,348,602 | 31,207,225 | 92.8% |
| **EBITDA** | **74,003** | **177,633** | **352,571** | **259,217** | **232,548** | **346,087** | **321,043** | **254,609** | **208,167** | **200,490** | **199,773** | **353,203** | **2,979,346** | **8.9%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (480,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (360,000) | | (360,000) | |
| Legal & accounting fees & creditors | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (180,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (58,522) | (58,744) | (58,966) | (87,457) | (87,789) | (88,122) | (88,456) | (88,791) | (89,128) | (89,466) | (89,805) | (90,146) | (975,392) | |

# Exhibit "E"

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Interest | (77,332) | (77,110) | (76,887) | (76,664) | (76,332) | (75,999) | (75,665) | (75,330) | (74,993) | (74,655) | (74,316) | (73,976) | (909,261) |
| Change in cash | (116,851) | (13,221) | 161,718 | 40,096 | 13,427 | 126,966 | 101,922 | 35,488 | (10,954) | (18,631) | (379,348) | 134,082 | 74,693 |
| Beginning cash | 149,381 | 32,531 | 19,310 | 181,028 | 221,124 | 234,551 | 361,517 | 463,439 | 498,927 | 487,973 | 469,341 | 89,993 | 149,381 |
| **Ending cash** | **32,531** | **19,310** | **181,028** | **221,124** | **234,551** | **361,517** | **463,439** | **498,927** | **487,973** | **469,341** | **89,993** | **224,075** | **224,075** |

| 2023 | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Georgia stores open:** | | | | | | | | | | | | AUV | 4,083,033 | |
| Sales 2019 | 3,505,924 | 4,053,034 | 6,723,294 | 4,939,601 | 5,142,667 | 6,103,846 | 4,846,535 | 4,491,427 | 5,414,046 | 4,280,386 | 4,395,189 | 5,918,868 | 59,814,819 | |
| Estimated retention rate | 85.0% | 85.0% | 85.0% | 87.5% | 87.5% | 87.5% | 90.0% | 90.0% | 90.0% | 92.5% | 92.5% | 92.5% | 88.7% | |
| **Estimated sales** | **2,980,036** | **3,445,079** | **5,714,800** | **4,322,151** | **4,499,834** | **5,340,865** | **4,361,882** | **4,042,284** | **4,872,642** | **3,959,357** | **4,065,550** | **5,474,953** | **53,079,433** | **100.0%** |
| Rebates and other income | 35,760 | 41,341 | 68,578 | 51,866 | 53,998 | 64,090 | 52,343 | 48,507 | 58,472 | 47,512 | 48,787 | 65,699 | 636,953 | 1.2% |
| Total income | 3,015,796 | 3,486,420 | 5,783,378 | 4,374,017 | 4,553,832 | 5,404,955 | 4,414,224 | 4,090,791 | 4,931,113 | 4,006,869 | 4,114,337 | 5,540,652 | 53,716,386 | 101.2% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 1,072,813 | 1,240,229 | 2,057,328 | 1,555,974 | 1,619,940 | 1,922,711 | 1,570,277 | 1,455,222 | 1,754,151 | 1,425,369 | 1,463,598 | 1,970,983 | 19,108,596 | 36.0% |
| Payroll, benefits & bonuses | 834,410 | 964,622 | 1,600,144 | 1,210,202 | 1,259,953 | 1,495,442 | 1,221,327 | 1,131,840 | 1,364,340 | 1,108,620 | 1,138,354 | 1,532,987 | 14,862,241 | 28.0% |
| Controllable expenses | 417,205 | 482,311 | 800,072 | 605,101 | 629,977 | 747,721 | 610,663 | 565,920 | 682,170 | 554,310 | 569,177 | 766,493 | 7,431,121 | 14.0% |
| Non-controllable expenses, ex RE tax | 238,403 | 275,606 | 457,184 | 345,772 | 359,987 | 427,269 | 348,951 | 323,383 | 389,811 | 316,749 | 325,244 | 437,996 | 4,246,355 | 8.0% |
| Rent | 193,818 | 193,818 | 193,818 | 193,818 | 193,818 | 195,024 | 195,024 | 195,024 | 195,024 | 195,024 | 195,024 | 195,024 | 2,334,258 | 4.4% |
| General & administrative expenses | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 780,000 | 1.5% |
| Management fees | 59,601 | 68,902 | 114,296 | 86,443 | 89,997 | 106,817 | 87,238 | 80,846 | 97,453 | 79,187 | 81,311 | 109,499 | 1,061,589 | 2.0% |
| Total operating expenses | 2,876,249 | 3,285,488 | 5,297,842 | 4,057,311 | 4,213,672 | 4,969,985 | 4,093,480 | 3,812,234 | 4,557,949 | 3,739,258 | 3,832,708 | 5,087,983 | 49,824,159 | 93.9% |
| **EBITDA** | **139,547** | **200,933** | **485,536** | **316,706** | **340,160** | **434,970** | **320,744** | **278,557** | **373,165** | **267,611** | **281,629** | **452,670** | **3,892,227** | **7.3%** |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (60,000) | (720,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | (520,000) | | (520,000) | |
| Legal & accounting fees & creditors | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (240,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (87,782) | (88,115) | (88,449) | (131,186) | (131,683) | (132,183) | (132,684) | (133,187) | (133,692) | (134,199) | (134,708) | (135,219) | (1,463,088) | |
| Interest | (115,998) | (115,665) | (115,331) | (114,996) | (114,498) | (113,999) | (113,498) | (112,995) | (112,490) | (111,983) | (111,474) | (110,963) | (1,363,891) | |
| Change in cash | (144,234) | (82,848) | 201,755 | (9,476) | 13,978 | 108,788 | (5,438) | (47,625) | 46,983 | (58,571) | (564,553) | 126,488 | (414,752) | |
| Beginning cash | 1,211,232 | 1,066,998 | 984,150 | 1,185,905 | 1,176,429 | 1,190,408 | 1,299,196 | 1,293,758 | 1,246,134 | 1,293,116 | 1,234,546 | 669,992 | 1,211,232 | |
| **Ending cash** | **1,066,998** | **984,150** | **1,185,905** | **1,176,429** | **1,190,408** | **1,299,196** | **1,293,758** | **1,246,134** | **1,293,116** | **1,234,546** | **669,992** | **796,480** | **796,480** | |

| 2024 | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Florida stores open:** | | | | | | | | | | | | | | |
| Sales 2019 | 1,793,039 | 2,651,615 | 4,277,035 | | | | | | | | | | 8,721,689 | |
| Estimated retention rate | 92.5% | 92.5% | 92.5% | | | | | | | | | | 92.5% | |
| **Estimated sales** | **1,658,561** | **2,452,744** | **3,956,258** | | | | | | | | | | **8,067,562** | **100.0%** |
| Rebates and other income | 28,196 | 41,697 | 67,256 | | | | | | | | | | 137,149 | 1.7% |
| Total income | 1,686,757 | 2,494,440 | 4,023,514 | | | | | | | | | | 8,204,711 | 101.7% |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 580,496 | 858,460 | 1,384,690 | | | | | | | | | | 2,823,647 | 35.0% |
| Payroll, benefits & bonuses | 472,690 | 699,032 | 1,127,533 | | | | | | | | | | 2,299,255 | 28.5% |
| Controllable expenses | 232,199 | 343,384 | 553,876 | | | | | | | | | | 1,129,459 | 14.0% |
| Non-controllable expenses, ex RE tax | 132,685 | 196,219 | 316,501 | | | | | | | | | | 645,405 | 8.0% |
| Rent | 57,417 | 57,417 | 57,417 | | | | | | | | | | 172,250 | 2.1% |

**Exhibit "E"**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| General & administrative expenses | 85,000 | 85,000 | 106,250 | | | | | | | | | | 276,250 | 3.4% |
| Management fees | 33,171 | 49,055 | 79,125 | | | | | | | | | | 161,351 | 2.0% |
| Total operating expenses | 1,593,658 | 2,288,567 | 3,625,392 | | | | | | | | | | 7,507,617 | 93.1% |
| **EBITDA** | **93,099** | **205,873** | **398,122** | | | | | | | | | | **697,094** | **8.6%** |
| | | | | | | | | | | | | | | |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (40,000) | (40,000) | (40,000) | | | | | | | | | | (120,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | | | - | |
| Legal & accounting fees & creditors | (15,000) | (15,000) | (15,000) | | | | | | | | | | (45,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (90,488) | (90,831) | (91,175) | | | | | | | | | | (272,493) | |
| Interest | (73,634) | (73,291) | (72,946) | | | | | | | | | | (219,871) | |
| Change in cash | (126,022) | (13,248) | 179,001 | | | | | | | | | | 39,730 | |
| Beginning cash | 224,075 | 98,052 | 84,804 | | | | | | | | | | 224,075 | |
| **Ending cash** | **98,052** | **84,804** | **263,805** | | | | | | | | | | **263,805** | |

| | Period | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Year | |
| **Georgia stores open:** | | | | | | | | | | | | | | |
| Sales 2019 | 3,505,924 | 4,053,034 | 6,723,294 | | | | | | | | | | 14,282,253 | |
| Estimated retention rate | 92.5% | 92.5% | 92.5% | | | | | | | | | | 92.5% | |
| **Estimated sales** | **3,242,980** | **3,749,057** | **6,219,047** | | | | | | | | | | **13,211,084** | **100.0%** |
| Rebates and other income | 38,916 | 44,989 | 74,629 | | | | | | | | | | 158,533 | 1.2% |
| Total income | 3,281,896 | 3,794,045 | 6,293,676 | | | | | | | | | | 13,369,617 | 101.2% |
| | | | | | | | | | | | | | | |
| Operating expenses: | | | | | | | | | | | | | | |
| Cost of sales | 1,167,473 | 1,349,660 | 2,238,857 | | | | | | | | | | 4,755,990 | 36.0% |
| Payroll, benefits & bonuses | 908,034 | 1,049,736 | 1,741,333 | | | | | | | | | | 3,699,104 | 28.0% |
| Controllable expenses | 454,017 | 524,868 | 870,667 | | | | | | | | | | 1,849,552 | 14.0% |
| Non-controllable expenses, ex RE tax | 259,438 | 299,925 | 497,524 | | | | | | | | | | 1,056,887 | 8.0% |
| Rent | 195,024 | 195,024 | 195,024 | | | | | | | | | | 585,072 | 4.4% |
| General & administrative expenses | 60,000 | 60,000 | 75,000 | | | | | | | | | | 195,000 | 1.5% |
| Management fees | 64,860 | 74,981 | 124,381 | | | | | | | | | | 264,222 | 2.0% |
| Total operating expenses | 3,108,847 | 3,554,194 | 5,742,786 | | | | | | | | | | 12,405,826 | 93.9% |
| **EBITDA** | **173,049** | **239,851** | **550,890** | | | | | | | | | | **963,791** | **7.3%** |
| | | | | | | | | | | | | | | |
| Cash flow items: | | | | | | | | | | | | | | |
| Remodel costs | (60,000) | (60,000) | (60,000) | | | | | | | | | | (180,000) | |
| Real estate taxes ($40k per unit) | | | | | | | | | | | | | - | |
| Legal & accounting fees & creditors | (20,000) | (20,000) | (20,000) | | | | | | | | | | (60,000) | |
| Trustee fees | | | | | | | | | | | | | - | |
| Debt service: | | | | | | | | | | | | | | |
| Principal | (135,731) | (136,246) | (136,763) | | | | | | | | | | (408,740) | |
| Interest | (110,451) | (109,936) | (109,419) | | | | | | | | | | (329,806) | |
| Change in cash | (153,133) | (86,331) | 224,708 | | | | | | | | | | (14,755) | |
| Beginning cash | 796,480 | 643,347 | 557,017 | | | | | | | | | | 796,480 | |
| **Ending cash** | **643,347** | **557,017** | **781,725** | | | | | | | | | | **781,725** | |

**EXHIBIT "F"**

**1069 RESTAURANT GROUP, LLC**
**CASE NO. 6:20-bk-05582-LVV**

**LIQUIDATION ANALYSIS**

| Asset | Estimated Liquidation Value as of April 1, 2021 |
|---|---|
| Cash[1] | $ 50,000.00 |
| Personal Property | $0 |
| Real Property | $0 |
| TOTAL LIQUIDATION | $50,000.00 |
| | |
| Secured Debt[2] | $52,363,414.00 |
| Administrative: Chapter 11 | $50,000.00 |
| Priority Tax Claim(s) | $0 |
| TOTAL DEBT | $52,413,414.00 |
| AVAILABLE FOR GENERAL UNSECURED CREDITORS | $0.00 |

[1] Per Schedules
[2] Per Settlement with Regions

**EXHIBIT "F"**

**METRO CORRAL PARTNERS, LLC**
**CASE NO. 6:20-bk-05583-LVV**

**LIQUIDATION ANALYSIS**

| Asset | Estimated Liquidation Value as of April 1, 2021 |
|---|---|
| Cash[1] | $4,254,000.00 |
| Personal Property[2] | $4.200,000.00 |
| Real Property[3] | $11,074,391.00 |
| TOTAL LIQUIDATION | $19,528,391.00 |
| | |
| Secured Debt[4] | $52,363,414.00 |
| Administrative: Chapter 11 | $250,000.00 |
| Priority Tax Claim(s) | $500,000.00 |
| TOTAL DEBT AHEAD OF UNSECURED CLAIMS | $53,113,414 |
| | |
| AVAILABLE FROM ASSETS OTHER THAN CASH | $0.00 |
| DISTRIBUTION PERCENTAGE: | |
| Cash | $4,254,000.00 |
| Less Administrative and Priority | $750,000.00 |
| Available for Unsecured Creditors | $3,504,000.00 |
| Unsecured Claims Including Regions' Deficiency Claim[5] | $14,000,000.00 |
| Percentage Distribution to Unsecured Creditors | 25% |

[1] Projections; amount is not subject to Regions' lien
[2] 50% of Scheduled Amount
[3] Per Schedules
[4] Per Settlement with Regions
[5] Assumes $10,000,000.00 Deficiency

**EXHIBIT "F"**

**METRO CORRAL PARTNERS, INC.**
**CASE NO. 6:20-bk-05584-LVV**

**LIQUIDATION ANALYSIS**

| Asset | Estimated Liquidation Value as of April 1, 2021 |
|---|---|
| Cash[1] | $1,655,274.00 |
| Personal Property[2] | $500,000.00 |
| Real Property[3] | $10,840,000.00 |
| TOTAL LIQUIDATION | $12,995,274.00 |
| | |
| Secured Debt[4] | $52,363,414.00 |
| Administrative: Chapter 11 | $250,000.00 |
| Priority Tax Claim(s) | $500,000.00 |
| TOTAL DEBT AHEAD OF UNSECURED CLAIMS | $53,113,414.00 |
| | |
| AVAILABLE FROM ASSETS OTHER THAN CASH | $0.00 |
| DISTRIBUTION PERCENTAGE: | |
| Cash | $1,655,274.00 |
| Less Administrative and Priority | $750,000.00 |
| Available for Unsecured Creditors | $905,274.00 |
| Unsecured Claims Including Regions' Deficiency Claim[5] | $13,000,000.00 |
| Percentage Distribution to Unsecured Creditors | 7% |

[1] Projections; amount is not subject to Regions' lien
[2] 50% of Scheduled Amount
[3] Per Schedules
[4] Per Settlement with Regions
[5] Assumes $10,000,000.00 Deficiency